**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-CR-373 (RCL)** |
| | : | |
| **DAVID RENE ARREDONDO,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S AMENDED**
**MOTION TO AMEND CONDITIONS OF RELEASE**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to Defendant David Rene Arredondo's ("Mr. Arredondo") Amended Motion to Amend Conditions of Release. ECF No. 32. Mr. Arredondo seeks to remove conditions of a curfew and location monitoring, imposed by Magistrate Judge G. Michael Harvey on November 10, 2022. ECF No. 10 at 2 and 3. The government respectfully objects.

**I.    Facts**

On January 6, 2021, Mr. Arredondo was part of a crowd that breached police lines and the U.S. Capitol Building.   At around 1:59 p.m., U.S. Capitol Police lines were overrun on the East Perimeter line of the Capitol.  A restricted perimeter had been established on the east side of the Capitol with metal bike rack fencing and was guarded by U.S. Capitol Police officers.  After the perimeter line was overrun, Capitol Police officers formed another defensive line at the base of the East Rotunda steps.  The crowd physically overpower the second police line in a matter of minutes and surge up to the East Rotunda doors.  There, Capitol Police officers form another defensive line and attempt to keep the crowd out of the building.

1

Members of the crowd attempt to open the East Rotunda door and break its windows. Before 2:25 p.m., the East Rotunda doors are opened from the inside of the Capitol by an unauthorized person.  At 2:25 p.m., a member of the crowd forces his way into the building through the opened door.  Officers attempts to close the door to keep the crowd from entering the building.

At some point, U.S. Capitol Police Officer T.M. is at the right of the East Rotunda doors and attempts to push the doors closed.  At some point, Mr. Arredondo moves forward towards Officer T.M., reaches out, and physically yanks Officer T.M.'s left arm to pull him away from the door.  This occurred after another officer, who was standing to Officer T.M.'s left, is physically pulled away from the door and onto the ground by members of the crowd.

Mr. Arredondo does enter U.S. Capitol building and remains inside for nearly 40 minutes.

## II.    Argument

The Bail Reform Act requires that a defendant on pretrial release be "subject to the least restrictive condition, or combination of conditions" that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).   In determining whether conditions will ensure a defendant's appearance or endangerment to a person or community, the court will consider:

> "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*United States v. Vasquez-Benitez*, 919 F.3d 546, 550-51 (D.C. Cir. 2019).

When considering these factors, the government respectfully suggests there are reasons to reject Mr. Arredondo's request.  First, the serious nature of the offense alleged against Mr.

Arredondo suggest the imposition of a curfew and electronic monitoring are the least restrictive means to abate his risk of non-appearance and a danger to the community. The evidence will show that on January 6, 2021, Mr. Arredondo, and/or the crowd he was a part of, physically breached police lines and the U.S. Capitol building to disrupt congress from certifying the presidential election. The evidence will show Officer T.M., while attempting to close the East Rotunda door to prevent members of the crowd from breaching the U.S. Capitol building, being physically pulled by Mr. Arredondo. Mr. Arredondo's yanking of Officer T.M., and his actions in and around the U.S. Capitol Building, is captured on video.

Second, Mr. Arredondo's criminal past likewise supports the continued imposition of a curfew and electronic monitoring. Mr. Arredondo's criminal history is old as his felony conviction occurred in 1994. However, it appears that Mr. Arredondo was charged with homicide for shooting a victim in the back and killing the victim. It appears that Mr. Arredondo pled guilty to two felony counts, Deadly Conduct and Aggravated Assault with a Deadly Weapon, leading to the dismissal of the homicide charges. Mr. Arredondo received ten years of prison for his crimes.

While in prison, Mr. Arredondo joined a gang, was charged with possessing a deadly weapon (1995) and charged with aggravated assault with a deadly weapon (2003). The 1995 deadly weapon charged was dismissed in 2000. The 2003 aggravated assault charge led to an increase of Mr. Arredondo's prison sentence by 3 years. Since his release from prison, it appears that Mr. Arredondo lived a law-abiding life until he allegedly engaged in violent acts on January 6.

The government respectfully submits that Mr. Arredondo's prior violent conviction, prior violent conduct while in prison, prior gang membership, and the violent nature of the charged offenses, support the continued use of a curfew and location monitoring. Based on representations

from the pre-trial services officer, Mr. Arredondo has been fully compliant with all his conditions. However, "model compliance" with pre-trial release conditions "is not enough to warrant adjustment of [his] pre-trial release conditions." *United States v. Henry*, 314 F.Supp.3d 130, 133 (D.D.C. June 11, 2018.)  The real question is whether there's been a development in Mr. Arredondo's situation that would affect the Court's assessment. *Id.*  The government submits there is none.  When the court issued conditions of release for Mr. Arredondo on November 8, 2022, it appears that his employment was the same as now.  It does not appear that Mr. Arredondo raised any concerns about the curfew or monitoring at that time.  It does not appear that Mr. Arredondo has raised concerns to his pre-trial services officer about the curfew or monitoring system as being harmful to his employment or safety.

### III.    Conclusion

For all the reasons stated herein, the government respectfully requests the Court deny Mr. Arredondo's request for modification of his release conditions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /*Raymond K. Woo*
_____
RAYMOND K. WOO
AZ Bar No. 023050
Assistant U.S. Attorney, Detailee
Capitol Siege Section
United States Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, DC 20530
(602) 908-8531
Raymond.woo@usdoj.gov