UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | NO. 22-CR-0373-RCL-001 |
| DAVID RENE ARREDONDO | § § § | |

<u>DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE AND DEPARTURE</u>

TO THE HONORABLE ROYCE C. LAMBERTH, DISTRICT JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA:

David Rene Arredondo ("Mr. Arredondo"), respectfully requests a below-guideline sentence based on his difficult upbringing, the overrepresentation of his criminal history, and the comparatively less-aggressive nature of his offense.

Mr. Arredondo comes from a deeply impoverished and, at the time, dangerous neighborhood in El Paso, Texas. Though his family was relatively stable, it was hard to escape the dysfunctional world around him. As a result, Mr. Arredondo struggled in his youth and made decisions he deeply regrets.

Despite these hardships, Mr. Arredondo prides himself on turning his life around and finding stability. At the time of his arrest, Mr. Arredondo had stayed out of trouble for close to two decades. He met a wife whom he loves deeply, and he now has two daughters, who mean the world to him. Mr. Arredondo built his own company and worked hard to better support them. Thus, the man he was in the 1990's into the early 2000s is a far cry from the man he is today. Despite how Mr. Arredondo turned

1

his life around, his offense from 2002 is still countable and results in a higher guideline range than is just.

Though Mr. Arredondo made the decidedly regrettable decision to participate in the events of January 6, 2021, his actions were not nearly as violent as most sentenced for similar charges. As such, if the Court finds that U.S.S.G. §2A2.4(c) is the proper guideline application, a lower than guideline sentence is appropriate.

## I.  Background

On January 3, 2024, Mr. Arredondo pleaded guilty to the entirety of his superseding indictment.[1] PSR ¶¶ 1 and 3.

Mr. Arredondo's guideline range was calculated at 12 months for Counts 3, 4, and 5 and 27-33 months for all other counts. PSR ¶ 111. However, Mr. Arredondo objected to the application of the Aggravated Cross Reference for Counts 1, 2, and 5, and the resulting Victim Related Adjustment, based on the insufficient evidentiary basis for its application. *See* Def's PSR Obj.. If the Court were to grant those objections, Mr. Arredondo would be facing a guideline range of 10-16 months based on an Offense Level of 11 and a Criminal History Category of II.

---

[1] The charges include: Civil Disorder in violation of 18 U.S.C. §231(a)(3), Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. §1752 (a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. §1752(a)(4), Disorderly Conduct in a Capital Building, in violation of 40 U.S.C. § 5104(e)(2)(D), Act of Physical Violence in the Capitol Grounds or Buildings in violation of  40 U.S.C. § 5104(e)(2)(F), and Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).

II.   **Legal Argument**

    a. **Mr. Arredondo's upbringing was difficult and he had to overcome the hardships of his youth.**

"Where a defendant's crime is attributable to a disadvantaged background…the defendant is less culpable than one without the excuse." *Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006).

Mr. Arredondo grew up in one of the most dangerous and impoverished areas in El Paso, Texas: South Central El Paso. PSR ¶ 72. The neighborhood was rife with gang violence and was a scary place to live. *Id.*; Mike Tapia, *Gangs in the El Paso-Juarez Borderland and the Role of History and Geography in Shaping Criminal Subcultures*, 23 TRENDS ORGANIZED CRIME 367, 367-84 (2019) (South Central El Paso is "epicenter" of gang activity). Median household income in that neighborhood is currently only $24,618. U.S. Census Bureau, Zip Code Tabulation Area 79905, https://data.census.gov/profile/ZCTA5_79905?g=860X X00US79905 (last visited Apr. 23, 2024). That is less than half of the median household income in El Paso County. U.S. Census Bureau, Median Household Income in El Paso County, Texas, https://data.census.gov/all?q=el%20paso,%20texas%20median%20household%20income (last visited Apr. 23, 2024).[2] Growing up on South Glenwood Street shaped Mr. Arredondo's view of his place in the world and what he thought was possible for a Mexican-American child like him. It also inevitably instilled a strong sense of instability.

---

[2] The median household income in El Paso County, Texas is $53, 424.

Mr. Arredondo's upbringing is important for various reasons. First, Mr. Arredondo's youthful offenses from 2002 and earlier must be understood in this context. Second, it informs why Mr. Arredondo was such an easy mark to become involved in this offense. The breach of the capitol did not happen in a vacuum. It was incited by political leaders who stayed above the fray while pushing regular citizens to storm the capitol. These leaders used fear to incite people and Mr. Arredondo understands fear in a way many people are privileged not to. Finally, such an upbringing makes it even more impressive that Mr. Arredondo eventually made a stable life for himself for decades. PSR ¶¶73-76

### b. Mr. Arredondo's 2002 case is over two-decades old and overrepresents his criminal history.

Under U.S.S.G. § 4A1.3(b), a downward departure may be warranted where "the defendant's criminal history category substantially over-represents the . . . likelihood that the defendant will commit other crimes." Stale priors are less indicative of future criminal activity. *See, e.g., United States v. Williams*, 432 F.3d 621 (6th Cir. 2005); *United States v. Fletcher*, 15 F.3d 553, 557 (6th Cir. 1994).

Going a number of years with an unblemished record may be a grounds for a variance as well. *See, e.g., United States v. Fuson*, No. 05-3782, 2007 WL 414265 (6th Cir. Feb. 8, 2007) (variance appropriate where defendant's record remained unblemished for a period of seven years).

This is especially true, where a prior offense was committed in a defendant's younger years, as youthful offenses are not as indicative of future behavior. *See, e.g., Johnson v. Texas,* 509 U.S. 350, 367 (1993) ("The relevance of youth as a mitigating

4

factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside."); *United States v. Polito*, 215 Fed. App'x 354, 357 (5th Cir. 2007); *United States v. Stern*, 590 F. Supp. 2d 945, 952 (N.D. Ohio 2008); *United States v. Allen*, 250 F. Supp. 2d 317 (S.D.N.Y. 2003).

A downward departure or variance is appropriate here, as Mr. Arredondo's Criminal History Category "substantially over-represents the . . . likelihood that [he] will commit other crimes." U.S.S.G. § 4A1.3(b).

Mr. Arredondo is in Criminal History Category II for an offense he committed when he was just 26 years old, almost two decades ago. PSR ¶¶ 61 & 63. He has completely changed his life since then, staying out of trouble for nearly two decades and starting a family. PSR ¶¶ 61 & 75. Mr. Arredondo started his own successful business, which he kept afloat until he had to shutter is as a collateral consequence of this offense. PSR ¶ 90. He was known as a quiet and unproblematic neighbor. *See* KVIA News Clip, Attached as Exhibit 1. By all measures, he worked hard to move on from his troubled past and create a stable life. As such, his 2002 offense does not represent his propensity to commit crimes today.

### c. **Mr. Arredondo's actions were much less violent than others charged with similar offenses. Sentencing Mr. Arredondo similarly would create disparities.**

18 U.S.C. § 3553(a)(6) instructs the Court to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *See, e.g., United States v. Presley*, 547 F.3d 625 (6th Cir. 2008);

5

*United States v. Begin*, 696 F.3d 405 (3d Cir. 2012); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008).

If the Court denies Mr. Arredondo's PSR objection and uses the Aggravated Assault cross-reference under U.S.S.G. §2A2.4(c), Mr. Arredondo would respectfully request that the Court vary downward in his case to avoid sentencing disparities. Mr. Arredondo's actions were not commensurate with the average defendant sentenced for similar charges.

Of all January 6th defendants who were sentenced to prison, the average sentence was 180 days. NPR, The January 6th Attack: The Cases Behind the Biggest Criminal Investigation in U.S. History (2024), https://www.npr.org/2021/02/09/965472049/the-capitol-siege-the-arrested-and-their-stories (last visited Apr. 23, 2024).

Those who were sentenced on similar charges to Mr. Arredondo were, on average, much more violent than him. They, for example: threw chairs at officers, sprayed a fire extinguisher over officers, tackled and injured officers, broke windows and sprayed bear spray, jabbed at and attempted to strike officers with a flag pole, used a baton to assault multiple officers, assaulted a photographer and used a taser against officers, punched and kicked police, hit an officer in the face with a coffee tumbler, pushed an officer down the stairs, punched an officer in the head, kicked and stomped on equipment, grabbed an officer's baton, struck an officer and grabbed his gas mask, shoved police before breaking a window and entering the capitol, struck an officer with a skateboard, and took part in beating an officer with various items.

*NPR,* Database of Jan. 6 Capitol Riot Cases, https://www.npr.org/2021/02/09/965472049/the-capitol-siege-the-arrested-and-their-stories (last visited Apr. 22, 2024).

Mr. Arredondo, on the other hand, grabbed the arm of a police officer who was stuck behind a door, attempting to assist him in getting out. *See* Video of East Rotunda Doors-Outside (attached as Exhibit 2); Video of East Rotunda Doors-Inside (attached as Exhibit 3); Officer Thomas Maney's statement to FBI on October 18, 2022 (attached as Exhibit 4); Officer Joshua D. Pollitt's testimony transcript on September 21, 2022 in *United States of America v. John Herbert Strand* 21-CR-0085-CRC (attached as Exhibit 5). He pushed bike rack fencing. *See* Video of East Side Bike Racks (attached as Exhibits 6 & 7); PSR ¶ 11. These actions are not as aggressive as those who were similarly charged. As such, a sentence within the guideline range calculated under U.S.S.G. §2A2.4(c) would be disproportionate in this case.

### III. Conclusion

Mr. Arredondo made a life he was proud of, despite the hardship he came from. For decades Mr. Arredondo stayed out of trouble and took care of his family. While he is deeply ashamed of his actions on January 6th, Mr. Arredondo was not nearly as violent as others charged with the same or similar offenses. Because of this, Mr. Arredondo respectfully requests a sentence below his guideline range.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


　　　　　　/S/
JOHN P. CALHOUN
Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas 79901
(915) 534-6525
*Attorney for Mr. Arredondo*


## CERTIFICATE OF SERVICE

　　I hereby certify that on the 29th day of April, 2024, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: AUSA, Raymond K. Woo, United States Attorney's Office District of Columbia 601 D. St. NW Washington, D.C. 20001.

　　　　　　/S/
JOHN P. CALHOUN
*Attorney for Mr. Arredondo*